IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| THE RECTOR, WARDENS, AND VESTRYMEN OF CHRIST CHURCH CATHEDRAL OF INDIANAPOLIS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Cause No. 1:14-cv-1331-LJM-MJD |
| JPMORGAN CHASE AND COMPANY, and JPMORGAN CHASE BANK, N.A., | ) ) ) | |
| Defendants. | ) ) | |

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**

---

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................ 1

II.  ARGUMENT ..................................................................................................... 3

   A.   The Church's ISA Claim Fails as a Matter of Law Because the Church Did Not Purchase or Sell Any Securities and Had No Authority Over Investment Decisions. ............... 3

     1.   The "equitable title" argument fails to acknowledge the Church's lack of investment authority. ................................................................................................. 4

     2.   The Church's conflict of interest argument does not state a claim under the ISA. ...... 6

     3.   The applicable requirements under Rule 10b-5 and the ISA are the same. ................ 6

     4.   The ISA's inclusion of "offer" does not change the analysis. ....................................... 7

   B.   The Church Cannot Sue for Constructive Fraud Given Its Admitted Lack of Authority to Make Investment Decisions on Behalf of the Trusts. ............................................................ 8

   C.   The Church's Response Fails to Identify Any Misrepresentation or Omission that Satisfies the Requirements of Rule 9(b). .................................................................................... 11

   D.   The Complaint's Four References to the Parent Company Fail to Assert Any Claim... 15

III. CONCLUSION ................................................................................................. 18

i

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Ackerman v. Nw. Mut. Life Ins. Co.*,
   172 F.3d 467 (7th Cir. 1999) ................................................................................................13

*Affiliated Ute Citizens of Utah v. U.S.*,
   406 U.S. 128 (1972) ................................................................................................................10

*Baker v. Carr*,
   369 U.S. 186 (1962) ..................................................................................................................3

*Bank of Am., N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013) ................................................................................................17

*Cincinnati Life Ins. Co. v. Beyrer*,
   722 F.3d 939 (7th Cir. 2013) ................................................................................................13

*Cincinnati Life Ins. Co. v. Grottenhuis*,
   2011 WL 1107114 (S.D. Ind. March 23, 2011) ................................................................12

*Emery v. Am. Gen. Fin., Inc.*,
   134 F.3d 1321 (7th Cir. 1998) ..............................................................................................15

*Esmark Inc. v. N.L.R.B.*,
   887 F.2d 739 (7th Cir. 1989) ................................................................................................16

*Grubb v. Federal Deposit Ins. Corp.*,
   868 F.2d 1151 (10th Cir. 1151) ............................................................................................10

*Hackford v. First Security Bank of Utah, N.A.*,
   521 F.Supp. 541 (D. Utah 1981) .......................................................................................4, 5

*Heckler & Koch, Inc. v. German Sport Guns GmbH*,
   976 F.Supp.2d 1020 (S.D. Ind. 2013) ............................................................................12, 10

*Hefferman v. Bass*,
   467 F.3d 596 (7th Cir. 2006) ................................................................................................17

*Heyman v. Heyman*,
   356 F.Supp. 958 (S.D.N.Y. 1973) ..........................................................................................5

*Holdsworth v. Strong*,
   545 F.2d 687 (10th Cir. 1976) ..............................................................................................11

US.55402398.05

*Isquith v. Caremark Int'l, Inc.*,
    136 F.3d 531 (7th Cir. 1998) ..................................................................6

*Katz v. Household Intern., Inc.*,
    91 F.3d 1036 (7th Cir. 1996) ................................................................15

*Kesling v. Kesling*,
    546 F.Supp.2d 627 (N.D. Ind. 2008) .......................................................7

*Levenfeld v. Boyd*,
    2003 WL 22532801 (N.D. Ill. 2003) ........................................................3

*Lewis & McGraw*, 619 F.2d 192 (2nd Cir. 1980) ....................................10

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................3

*Midwest Commerce Banking Co. v. Elkhart City Ctr.*,
    4 F.3d 521 (7th Cir.1993) ......................................................................12

*O.K. Sand & Gravel, Inc. v. Martin Marietta Corp.*,
    786 F.Supp. 1442 (S.D. Ind. 1992) ..........................................................2

*O'Brien v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago*,
    593 F.2d 54 (7th Cir. 1979) ...........................................................3, 4, 5

*Ormond v. Anthem, Inc.*,
    2008 WL 906157 (S.D. Ind. 2008) ...........................................................7

*Panter v. Marshall Field & Co.*,
    646 F.2d 271 (7th Cir. 1981) .................................................................10

*Pippenger v. McQuik's Oilube, Inc.*,
    854 F.Supp. 1411 (S.D. Ind. 1994) ..........................................................7

*Plumbers & Pipefitters Local Union Pension Fund v. Zimmer Holdings, Inc.*,
    673 F.Supp.2d 718 (S.D. Ind. 2009) ......................................................13

*Rabin v. JPMorgan Chase Bank, N.A.*,
    2007 WL 2295795 (N.D. Ill. 2007) ..........................................................6

*Rosenblum v. Travelbyus.com Ltd.*,
    299 F.3d 657 (7th Cir. 2002) ............................................................16, 17

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*,
    552 U.S. 148 (2008) ..............................................................................10

*Superintendent of Ins. v. Banker's Life & Cas. Co.*,
    404 U.S. 6 (1971) ....................................................................................3

-iii-

*U.S. Gypsum Co. v. Ind. Gas Co., Inc.,*
    350 F.3d 623 (7th Cir. 2003) ................................................................11

*Va. Bankshares, Inc. v. Sandberg,*
    501 U.S. 1083 (1991) ..........................................................................5

*Wilbur v. Keybank Nat'l Ass'n,*
    962 F.Supp. 1122 (N.D. Ind. 1997) ......................................................10

*Windon Third Oil & Gas Drilling P'ship v. FDIC,*
    805 F.2d 342 (10th Cir. 1986) ..............................................................3

*Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.,*
    536 F.3d 663 (7th Cir. 2008) ................................................................12

**STATE CASES**

*Carroll v. J.J.B. Hilliard,*
    738 N.E.2d 1069 (Ind. Ct. App. 2000) ..................................................8

*Davis v. Davis,*
    889 N.E.2d 374 (Ind. Ct. App. 2008) ....................................................6

*Gass v. Anna Hosp. Corp.,*
    911 N.E.2d 1084 (Ill. App. 2009) .........................................................16

*In re Bender,*
    844 N.E.2d 170 (Ind. Ct. App. 2006) ....................................................9

*In re Rueth Dev. Co.,*
    976 N.E.2d 42 (Ind. Ct. App. 2012) ......................................................9

*In re Wilson,*
    930 N.E.2d 646 (Ind. Ct. App. 2010) ....................................................6

*Kirchoff v. Selby,*
    703 N.E.2d 644 (Ind. 1998) .................................................................7

*Lean v. Reed,*
    876 N.E.2d 1104 (Ind. 2007) ...............................................................7

*Manns v. Skolnik,*
    666 N.E.2d 1236 (Ind. Ct. App. 1996), *trans. denied* ............................8

*McCalment v. Eli Lilly & Co.,*
    860 N.E.2d 884 (Ind. Ct. App. 2007) ....................................................11

*McKinney v. State,*
    693 N.E.2d 65 (Ind. 1998) ...................................................................12

US.55402398.05

*Plymale v. Upright,*
    419 N.E.2d 756 (Ind. Ct. App. 1981) ...................................................................................10

*Terre Haute Trust Co. v. Scott,*
    181 N.E. 369 (Ind. Ct. App. 1932) ........................................................................................3

*Whitehouse v. Quinn,*
    477 N.E.2d 270 (Ind. 1985) ....................................................................................................2

## STATE STATUTES

Ind. Code § 23-2-1-12 ....................................................................................................................8

Ind. Code § 23-19-5-9 ........................................................................................................1, 3, 4, 7

Ind. Code § 30-4-3-7 .......................................................................................................................6

Ind. Code § 34-11-2-4 .....................................................................................................................2

## RULES

Fed. R. Civ. Pro. 8 .........................................................................................................................17

Fed. R. Civ. Pro. 9(b) .............................................................................................2, 11, 12, 13, 14, 15, 17

Fed. R. Civ. Pro. 12(b)(6) ....................................................................................................2, 16, 11

Indiana Trial Rule 60(B)(3) .............................................................................................................9

## REGULATIONS

17 C.F.R. § 240.10b-5 ...............................................................................................................4, 6

## OTHER AUTHORITIES

37 C.J.S. Fraud § 129 (1943) ........................................................................................................10

I.     **INTRODUCTION**

Defendants' opening brief (Dkt. 16) demonstrated that four of the five claims against the Trustee (Count I for constructive fraud, Counts III and IV for violations of the federal and Indiana securities laws, respectively, and Count V for breach of fiduciary duty), and all claims against the Parent Company, fail as a matter of law.  In response to Defendants' Motion to Dismiss, the Church has voluntarily dismissed Counts IV (federal securities fraud) and V (breach of fiduciary duty), so that streamlines the analysis in this reply.   In support of Count I for constructive fraud, Count III under the Indiana Securities Act ("ISA"), and its claims against the Parent Company, the Church responds with arguments that, while impassioned, cannot avoid dismissal.

Regarding its claim under the ISA, the Church argues that the Act has no purchaser-seller requirement and that the Church as beneficiary should be treated as a purchaser in any event. The plain language of the statute rebuts the first argument: a "person is liable to the *purchaser* if the person *sells* a security in violation" of the ISA, and a "person is liable to the *seller* if the person *buys* a security in violation" of the ISA.  Ind. Code § 23-19-5-9(a) & (b) (emphasis added).  The Church neither purchased nor sold securities and therefore cannot invoke the Act. And the case law rejects the argument that the Church as beneficiary has a claim under the ISA for the straightforward reason that, as the Church admits, it "had no legal right or authority to make investment decisions on behalf of the Trusts."  Complaint ¶82.

As for the reliance element of its constructive fraud claim, the Church cannot reconcile its claim that it relied on something the Trustee represented, on the one hand, with its acknowledgement that it had no authority to make decisions or to remove the Trustee, on the other.  The Church's argument that reliance should be presumed flies in the face of the law.

Responding to the Defendants' Rule 9(b) challenge, the Church insists that its complaint is "chocked full of facts describing JPMorgan's scheme to defraud the Church in great detail"[1] and "was filed after a thorough investigation which revealed substantial evidence supporting plaintiff's allegations and claims."  Opposition Brief (Dkt. 26) ("Opp."), p. 3.  Yet the Church's response fails to point to a single allegedly fraudulent statement or omission in its Complaint that satisfies the particularity requirements of Rule 9(b).  Not one.  The Complaint fails to allege the who, what, when, where, and how of the fraud the Church claims occurred—what the Seventh Circuit calls the first paragraph of any newspaper story.  Without such allegations, the Church's two fraud-based claims cannot proceed.

Finally, the Church does not dispute that it has conflated the Bank and the Parent Company.  Nor does it point to any allegation that the Parent assumed a duty to the Church or is subject to liability under a veil-piercing or other theory of vicarious liability.

In sum, the Church has failed to meet the threshold pleading standards under Rule 12(b)(6) on the claims addressed herein and may proceed with only one claim, Count II for breach of trust, against one defendant, the Trustee.[2]  Defendants dispute the merits of that one claim, and will address that claim at the merits stage of this litigation.

---

[1]   The recitations of facts in the Church's Complaint and response brief contain a host of misstatements and inaccuracies, but Defendants confine this reply to whether they state claims.

[2]   As noted in Defendants' opening brief, the breach of trust claim is largely if not completely barred by the two-year statute of limitations in Indiana Code § 34-11-2-4.  *See* Defendants' Brief in Support ("Def. Br."), p. 6 n.2.  The Church's assertion that the six-year statute of limitations for fraud applies (Opp., p. 2 n.1) fails for two reasons.  First, the constructive fraud claim fails to state a claim for relief.  Second, even if the constructive fraud claim could survive, "the applicable statute of limitations should be ascertained by reference to the nature of the harm alleged rather than by reference to theories of recovery.  In other words, the applicable statute of limitations is ascertained by identifying the nature or substance of the cause of action and not the form of the pleadings," which in this case is a claim for breach of trust.  *Whitehouse v. Quinn*, 477 N.E.2d 270, 273 (Ind. 1985); *see also O.K. Sand & Gravel,*

US.55402398.05

## II.   ARGUMENT

**A.   The Church's ISA Claim Fails as a Matter of Law Because the Church Did Not Purchase or Sell Any Securities and Had No Authority Over Investment Decisions.**

The securities laws require accurate disclosure of material facts to those making investment decisions.  The Church erroneously asserts that a trust beneficiary that has no authority to make investment decisions and never purchased or sold a security itself may nevertheless sue a trustee for securities fraud.  Neither the ISA nor any of the Church's cases[3] supports that proposition.  *See, e.g., O'Brien v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago*, 593 F.2d 54, 60 (7th Cir. 1979) ("a court should be reluctant to imply [a securities fraud] cause of action for wrongs that do not fall within [the securities law's] fundamental purpose of requiring full and fair disclosure to participants in securities transactions of the information that would be useful to them in deciding whether to buy or sell securities.").

Indiana Code § 23-19-5-9 contains the ISA's "Civil Liability" provision.  It provides in relevant part that

- "a person is liable *to the purchaser* if the person sells a security in violation of this article;"
- "*[t]he purchaser* may maintain an action to recover the consideration paid for the security, less the amount of any income received on the security, … or for actual damages;"
- "a person is liable to *the seller* if the person buys a security in violation of this article;" and

---

*Inc. v. Martin Marietta Corp.*, 786 F.Supp. 1442 (S.D. Ind. 1992) (applying two-year statute of limitations to fraud claim in fiduciary setting).

[3]   *See* Opp., pp. 23-28, citing, e.g., *Terre Haute Trust Co. v. Scott*, 181 N.E. 369 (Ind. Ct. App. 1932) (no discussion of securities fraud); *Baker v. Carr*, 369 U.S. 186 (1962) (discussing equal protection and having nothing to do with securities fraud); *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) (addressing standing to bring a claim under the Endangered Species Act); *Superintendent of Ins. v. Banker's Life & Cas. Co.*, 404 U.S. 6 (1971) (addressing claims of state insurance agency); *Windon Third Oil & Gas Drilling P'ship v. FDIC*, 805 F.2d 342, 346 (10th Cir. 1986), (affirming dismissal of a securities fraud action brought by investors against accountant); *Levenfeld v. Boyd*, 2003 WL 22532801 at *4 (N.D. Ill. 2003) (dismissing claims of investors who purchased stock in a holding company).

US.55402398.05

- "*[t]he* seller may maintain an action to recover the security, and any income received on the security, … or for actual damages."

*Id.*, §§ (a) & (b) (emphasis added).  The language is clear: to assert a claim under the ISA, one must have been a purchaser or a seller of a security.  The Church was neither.

The Church's response brief makes several flawed arguments regarding its ISA claim.  First, the Church argues that, because it holds "equitable title" to the assets in the Trusts, it is the real party in interest and therefore has standing to sue under the ISA.  Second, the Church argues that, because Defendants supposedly bought and sold securities from themselves, the Church must have a claim because Defendants would not sue each other.  Third, the Church claims that the anti-fraud provisions of the federal securities laws differ from those provisions in the ISA such that authorities regarding federal law do not apply.  Finally, the Church argues that inclusion of the word "offer" in the ISA expands the reach of the statute to encompass the Church as a non-purchaser of securities.  These arguments ignore the text of the ISA and on-point, persuasive Seventh Circuit authority discussed in Defendants' opening brief and below.

### 1.     The "equitable title" argument fails to acknowledge the Church's lack of investment authority.

None of the Church's cases supports the argument that a trust beneficiary with "equitable title" to securities but no investment authority may bring an action against the trustee under the securities laws.  In fact, *Hackford v. First Security Bank of Utah, N.A.*, 521 F.Supp. 541 (D. Utah 1981), on which the Church relies (Opp., p. 26), illustrates precisely why the Church's ISA claim fails.  In *Hackford*, the Court determined that the issue was not a question of the beneficiaries' standing to bring suit, as the Church argues in its response.  To the contrary, the court noted that "[t]o say the trust beneficiaries have standing is *not* to say that they have stated a cause of action under Rule 10b-5." *Id.* at 549 (emphasis added).   Citing the Seventh Circuit's decision in *O'Brien*, the court dismissed the trust beneficiaries' 10b-5 claim against the trustee because the

US.55402398.05

"trustee [ ] was given control, indeed the sole discretion to act" and make investment decisions on behalf of the trust.  *Id. at* 552.  The court concluded that "[i]t makes little sense to impose upon the trustee, here, a duty to disclose the nature of its actions [to beneficiaries] from whom the decision-making ability has been intentionally removed."  *Id.* at 552.  Rather, "under the terms of the trust agreement, the beneficiaries . . . had no expectation that the Bank would inform them in advance of its actions.  Consequently, it is difficult to conceive that a failure to disclose would have deceived them."  *Id.* at 552.

     *Hackford* rebuts rather than helps the Church.  It adopts the holding and reasoning of the Seventh Circuit in *O'Brien*, which teaches that plaintiffs who were neither purchasers nor sellers of securities may not pursue a claim under the securities laws.  *O'Brien*, 593 F.3d at 60.  Here, the Complaint's repeated admissions that the Trustee alone made all investment decisions preclude a claim under the ISA based on alleged misstatements or failures to disclose information about the purchase or sale of securities.

     The Church cites only one other "equitable title" case – *Heyman v. Heyman,* 356 F.Supp. 958 (S.D.N.Y. 1973).  *Heyman* chose to follow a line of authority that "reject[ed] the [ ] argument that deception must be a proximate cause of the injury for liability to attach under § 10(b)."  *Id.* at 967-68.  However, the United States Supreme Court has overturned the line of cases that includes *Heyman* – cases holding that proximate cause is not required to support a claim under the securities laws.  *See Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1098 (1991).  Here, the Church cannot demonstrate any proximate cause to support a securities fraud claim because, like the trust beneficiaries in *Hackford*, the Church had no authority to make investment decisions on behalf of the Trusts.

US.55402398.05

2.    **The Church's conflict of interest argument does not state a claim under the ISA.**

By alleging that the Trustee had a conflict of interest in making certain investment decisions on behalf of the Trusts, the Church attempts to repackage its breach of trust claim alleged in Count II into a securities fraud claim.  *See, e.g.*, *Davis v. Davis*, 889 N.E.2d 374, 381, 382-83 (Ind. Ct. App. 2008) (self-dealing allegations giving rise to a breach of trust claim); *In re Wilson*, 930 N.E.2d 646 (Ind. Ct. App. 2010) (same); Ind. Code § 30-4-3-7.  However, the securities laws' anti-fraud provisions require plaintiffs to allege that they made an investment decision in reliance on the purported fraud.  *Isquith v. Caremark Int'l, Inc.*, 136 F.3d 531, 534 (7th Cir. 1998); *Rabin v. JPMorgan Chase Bank, N.A.*, 2007 WL 2295795, at * 4 (N.D. Ill. 2007) (rejecting trust beneficiaries' securities fraud claim where a trustee with full discretionary authority purchased and sold shares of its proprietary funds for the beneficiaries' account without informing the beneficiaries and stating "a plaintiff's ability to state a claim against an agent or trustee under the securities law boils down to whether the investor actually made an investment decision").  The Church's Complaint includes no such allegations.

The Court should reject the Church's argument that it must have a claim under the ISA simply because the Church alleges that Defendants bought and sold securities from themselves in violation of their fiduciary duties.  Standing alone as they do in the Church's Complaint (i.e., without any allegation that the Church made an investment decision in relation to them), the alleged conflict of interest transactions do not give rise to an actionable claim under the ISA.

3.    **The applicable requirements under Rule 10b-5 and the ISA are the same.**

The Church also urges the Court to find a "critical difference between the state and federal securities statutes."  Opp., p. 25.  But the Church's attempt to distinguish the ISA from federal securities law on the purchaser-seller requirement misses the mark.  Both federal district

courts in Indiana and the Indiana Supreme Court encourage reliance on federal case law interpreting the antifraud provisions of the federal securities laws when construing the antifraud provisions of the ISA.  *See Kesling v. Kesling*, 546 F.Supp.2d 627, 636 n.4 (N.D. Ind. 2008); *Ormond v. Anthem, Inc.*, 2008 WL 906157, at *14 (S.D. Ind. 2008); *Lean v. Reed*, 876 N.E.2d 1104, 1107 (Ind. 2007).  But regardless of the relevance of federal law, the plain language of the ISA's civil liability provision permits recovery only by purchasers or sellers of securities.  Ind. Code § 23-19-5-9 (a) & (b).

Furthermore, Indiana case law analyzing the purpose of the ISA confirms that only purchasers and sellers of securities may invoke the Act.  Like the antifraud provisions of the federal securities laws, the antifraud provisions of the ISA prohibit material misrepresentations "where a reasonable investor would have considered [the information] important in making his investment decision."  *Pippenger v. McQuik's Oilube, Inc.*, 854 F.Supp. 1411, 1425 (S.D. Ind. 1994).  The Indiana Supreme Court has noted that the Act "requires either privity between the seller and purchaser, or that the person charged have offered the security to the purchaser." *Kirchoff v. Selby*, 703 N.E.2d 644, 650 (Ind. 1998) (emphasis added).  Consistent with the purpose of the securities laws—to require accurate disclosure of material information to those deciding whether to purchase or sell securities—the ISA creates an action only for someone who made an investment decision.

### 4.  The ISA's inclusion of "offer" does not change the analysis.

Nothing in the ISA or case law construing it supports the Church's contention that the inclusion of "offer" in the ISA's anti-fraud provision permits a trust beneficiary to pursue a securities claim against a trustee for investment decisions that were committed to the trustee's sole discretion.  Nor does the Church specify what investments "JPMorgan" purportedly "offered" or what misrepresentations or omissions it made at the time of the "offers" that

-7-

induced the Church, as purchaser, to invest in a security as required to allege a claim under the ISA. "According to the [Indiana] Securities Act, in connection with an offer, sale or purchase of any security, an individual may not 'omit to state a material fact necessary in order to make the statements made in the light of circumstances under which they are made, not misleading ....'" *Carroll v. J.J.B. Hilliard*, 738 N.E.2d 1069, 1077 (Ind. Ct. App. 2000) (citing Ind. Code § 23-2-1-12(2)). "[O]mitted information is 'material' within the meaning of IC § 23-2-1-12 if it 'is relevant to the investment decision.'" *Id.* (quoting *Manns v. Skolnik*, 666 N.E.2d 1236, 1249 (Ind. Ct. App. 1996), *trans. denied*). Because the Church admittedly made no investment decisions as to any securities transactions, it cannot bring itself within the ISA.

Finally, no rational interpretation of the ISA, "flexible" or otherwise, would permit the Church's claim to survive a motion to dismiss. The Church did not purchase or sell any security or have authority to do either. Nor did the Church have any authority or opportunity to participate in any investment decision. The Church therefore does not and cannot allege a causal nexus between any purported representations or omissions and any investment decision that led to a loss in the Trusts.[4] In short, the Church was not a purchaser or seller or someone involved in making investment decisions and therefore has no claim under the ISA as a matter of law.

**B.     The Church Cannot Sue for Constructive Fraud Given Its Admitted Lack of Authority to Make Investment Decisions on Behalf of the Trusts.**

The Church's constructive fraud claim fails for essentially the same reason as the securities fraud claim. The Complaint forecloses any argument that the Church relied on the Trustee in making investment decisions. The Complaint concedes that the Church "had no legal right or authority to make investment decisions on behalf of the Trusts and [] could not terminate

---

[4]     Defendants also detailed "numerous cases hold[ing] that the securities laws do not require disclosure of the kinds of facts regarding compensation that the Church alleges should have been disclosed here." Def. Br., p. 20. The Church's opposition brief does not address those authorities.

-8-

JPMorgan's trusteeship."  Complaint ¶ 82.  Despite the Complaint's concessions on these points, the Church argues that this Court must presume reliance.  But the cases the Church relies on for the proposition that "[a]ll that is required by plaintiff to allege a constructive fraud claim is the existence of a fiduciary relationship" (Opp., p. 4) do not support the Church's position.  If the Court agreed with this argument, it would make new law holding that any time a person or entity undertook a fiduciary role, a court would automatically presume that that person or entity was committing fraud.  Indiana law has never gone that far.

In this regard, the Church overreaches when it cites *In re Rueth Dev. Co.*, 976 N.E.2d 42 (Ind. Ct. App. 2012), and *In re Bender*, 844 N.E.2d 170 (Ind. Ct. App. 2006), for the proposition that "[a] presumption of fraud arises once the plaintiff establishes the existence of a fiduciary relationship."  Opp, p. 21 (quoting *Reuth*, 976 N.E.2d at 52).  *Rueth* and *Bender* say nothing about the *pleading requirements* for constructive fraud claims or any other claim for relief. *Rueth* analyzes a request for relief from judgment under Indiana Trial Rule 60(B)(3) and stands for the unremarkable proposition that a plaintiff alleging the existence of constructive fraud in the procurement of a civil judgment has the *burden of proving* the existence of a duty and the gaining of an advantage by the party to be charged with the fraud.  *Bender* similarly discusses the *proof* required to sustain a claim for constructive fraud.  Neither case stands for the proposition that one to whom a fiduciary duty is owed is entitled to a blanket "presumption of fraud," much less a presumption of reliance, based on nothing more than the existence of a fiduciary relationship.  Moreover, a presumption of reliance can arise only where reliance is possible in the first instance.

Courts addressing similar claims that the law "presumes" reliance (which only occurs in cases based on alleged omissions) have found that "[w]here no reliance is possible under any

US.55402398.05

imaginable set of facts, such a presumption would be illogical to the extreme." *Panter v.*

*Marshall Field & Co.*, 646 F.2d 271, 284 (7th Cir. 1981) (citing *Lewis & McGraw*, 619 F.2d

192, 195 (2nd Cir. 1980)), *cert. denied*; internal quotation omitted).  The general test for reliance

is "whether the party would have acted in absence of the representation." *Heckler*, 976

F.Supp.2d at 1032 (citing *Plymale v. Upright*, 419 N.E.2d 756, 761 n.3 (Ind. Ct. App. 1981)).

When "the evidence is so clear as to be susceptible of only one reasonable inference it is for the

court to determine as a matter of law whether [the party asserting fraud] was justified in relying

on the representation." *Plymale*, 419 N.E.2d at 763 (quoting 37 C.J.S. Fraud § 129, pp. 455-456

(1943)).

Here, as a matter of law, there could be no reliance (let alone reasonable reliance) on the

Trustee's investment recommendations because the Trustee did not and was not required to make

any.  No reliance was possible.  The Trustee made the investment decisions pursuant to the

authority and direction in Mr. Lilly's will.  Again, the Church had no authority to make

investment decisions on behalf of the Trusts and could not terminate the Bank's trusteeship

(except by going to court).[5]  Complaint ¶ 82.  A "litigant may plead itself out of court by alleging

---

[5]     The Church erroneously relies on *Wilbur v. Keybank Nat'l Ass'n,* 962 F.Supp. 1122 (N.D. Ind. 1997), to argue that, "when ruling upon the beneficiaries' constructive fraud claim, [the court] held that a beneficiary is entitled to rely upon a trustee." Opp., p. 23.  *Wilbur* did not involve a claim for constructive fraud against a trustee.  Rather, the plaintiff sued the trustee solely for breach of trust.  *Id.* at 1129.  The court's discussion of the reliance issue pertains to its analysis of a statute of limitations defense, not whether reliance can be presumed for purposes of alleging a claim for constructive fraud.

The Church cites additional inapplicable cases for the proposition that "[b]ecause the Church adequately pleaded the existence of a fiduciary relationship, reliance is presumed."  Opp., p. 22.  In fact, the words "fiduciary" and "constructive fraud" appear nowhere in two of the cited cases, *see Stoneridge Inv. Partners, LLC v. Scientific-Atlanta*, 552 U.S. 148 (2008); *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153 (1972), and the others are equally irrelevant.  *See Grubb v. Federal Deposit Ins. Corp.*, 868 F.2d 1151 (10th Cir. 1151) (actual purchaser of bank justifiably relied on seller's affirmative misstatements regarding the bank's

-10-

(and thus admitting) the ingredients of a defense." *U.S. Gypsum Co. v. Ind. Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). The Church has done that here; indeed, it had no choice in light of the facts. Because the facts alleged in the Church's complaint "are incapable of showing detrimental reliance," dismissal with prejudice is appropriate. *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 896 (Ind. Ct. App. 2007).

Finally, the Church suggests that there will be a miscarriage of justice if it is not permitted to pursue its fraud-based claims—it "would turn trust and fiduciary law on its head if a trustee were not accountable for fraud in the discharge of its duties." *See* Opp., p. 21. Defendants do not argue that trustees have immunity from fraud. They simply maintain and have demonstrated that the Church has not pled actionable fraud-based claims. This does not mean that the Church lacks a remedy. Instead, it means that the Church has met the threshold requirements of Rule 12(b)(6) only with respect to its claim for breach of trust against the Trustee, and that all other claims included in its Complaint must be dismissed as a matter of law.

**C.    The Church's Response Fails to Identify Any Misrepresentation or Omission that Satisfies the Requirements of Rule 9(b).[6]**

Despite a lengthy recitation of its generalized allegations in its response brief, the Church does not contend that it has alleged the "who, what, when, where and how" necessary to comply with the particularity requirements of Rule 9(b), which applies to both the constructive fraud and the ISA claims.[7] Although the response repeats general allegations from the Complaint, the Church fails to point to a single alleged fraudulent statement or omission that satisfies the

---

financial condition); *Holdsworth v. Strong*, 545 F.2d 687 (10th Cir. 1976) (actual sellers of stock in closely held company justifiably relied on affirmative misstatement of facts made by purchaser, where the sellers and the purchaser were "business friends" whose "friendship extended as well to their families").

[6]   Because the Church's ISA and constructive fraud claims fail for the reasons already discussed, the following Rule 9(b) discussion is academic.

[7]   The Church's response fails to address Defendants' 9(b) arguments as to the ISA claim.

-11-

requirements of Rule 9(b). Rather, the Church discusses the purported scope of and limitations on its pre-filing investigation and then argues that Defendants alone possess the information required to plead with any more detail. The Church's claim that it conducted a pre-filing investigation has no bearing on whether the Complaint satisfies Rule 9(b). Nor could discovery save the Church's fraud claims.

As discussed in more detail in Defendants' opening brief, Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Cincinnati Life Ins. Co. v. Grottenhuis*, 2011 WL 1107114, *8 (S.D. Ind. March 23, 2011); *McKinney v. State*, 693 N.E.2d 65, 71 (Ind. 1998). "The circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Windy City Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Services, Inc.*, 536 F.3d 663, 668 (7th Cir. 2008); *Heckler & Koch, Inc. v. German Sport Guns GmbH*, 976 F.Supp.2d 1020, 1027 (S.D. Ind. 2013). Rule 9(b) requires that a plaintiff "set forth the date and content of the statements or omissions that [the plaintiff] claimed to be fraudulent." *Midwest Commerce Banking Co. v. Elkhart City Ctr.*, 4 F.3d 521, 524 (7th Cir.1993) (citations omitted).

Defendants explained in their opening brief that none of the allegations in the Church's Complaint identifies who at "JPMorgan" said what to whom, where, or when, or how any alleged statement was false, much less how the Church did or even could rely to its detriment. *See* Def. Br., pp. 14-20. The Church "has not identified anything specific that Defendants should have disclosed" or any misrepresentations of past or existing fact that any individual made.

-12-

*Plumbers & Pipefitters Local Union Pension Fund v. Zimmer Holdings, Inc.*, 673 F.Supp.2d 718, 740 (S.D. Ind. 2009).

Instead of pointing to any specific allegations in the Complaint that satisfy Rule 9(b), the Church touts the investigation it conducted before filing.  Opp., pp. 18-20.  "But Fed. R. Civ. P. 9(b) does more than simply mandate that attorneys show some increased amount of work." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 950 (7th Cir. 2013).  "Rather, 'the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported.'  That is, the effort must manifest itself in the complaint through the familiar 'who, what, when, where and how' requirements."  *Id.* (citing *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)).  Here, regardless of what efforts the Church undertook to investigate its claims, the Complaint fails to allege fraud with the particularity that Rule 9(b) requires.

For example, the Church argues that unidentified "JPMorgan" employees used "scorecards" showing which investments to "push to their clients."  Yet the Complaint alleges not a single misrepresentation regarding these alleged scorecards.  The Church likewise details its review of the Parent Company's annual reports and newspaper articles about alleged regulatory investigations.  The Church is obviously trying to imply that JPMorgan is a bad actor; but the Church makes no allegations of any misrepresentations regarding the specific trusts at issue in this litigation, with particularity or otherwise.  The Church boasts that it "review[ed] and analyze[d] ten years (thousands of pages) of monthly account statements relating to multiple accounts issued by JPMorgan which identified the time, place, amount and actual or estimated value of every transaction conducted by JPMorgan relating to the Church Trusts."  Opp., p. 18. Perhaps so.  But the Church still cannot identify a single misstatement or omission of material

US.55402398.05

fact that it discovered during its investigation, much less one that influenced any investment decision (which, as it concedes, the Church had no ability to make).

The Church asserts that the supposed limitations of its pre-Complaint investigation hampered its ability to plead its fraud-based claims. The Church identifies three specific areas of information it claims to lack, but none of the information would aid the Church in satisfying Rule 9(b). First, the Church argues that, although it has account statements, those statements "do not identify the entities, officers and employees who made the actual buys or sells of securities utilizing the Church's money." Opp., p. 18. But that information is irrelevant. The Complaint fails to allege that the Trustee made any misrepresentation or omitted material information regarding the purchase or sale of a security by the Church such that the Church needs to know the identity of a speaker or any other particular details necessary to satisfy Rule 9(b). Thus, discovery into the identity of "JPMorgan" employees who executed particular buys and sells cannot possibly assist the Church in shoring up allegations of fraud based on non-existent and unidentified misrepresentations and omissions.

Second, the Church claims that it "does not know which JPMorgan subsidiary was the actual seller of the questionable proprietary products." Opp., pp. 18-19. But the Church fails to explain how this information would assist it in pleading either of its fraud claims. The Church does not argue that the unidentified JPMorgan subsidiaries made representations to the Church about anything; nor could it, having admitted that it does not know which subsidiaries were supposedly involved in the sale of the products.

Finally, the Church claims that its lack of information regarding a "guided architecture" program prevented it from pleading its fraud claims with more detail. Opp., p. 20. However, the Complaint asserts that Defendants concealed the existence of this program from the Church. *See*

-14-

Complaint, ¶¶ 238, 261.  The Church cannot explain why it needs more information about a guided architecture program to enhance its pleading when its claim is that it was defrauded by the alleged concealment.  Moreover, as Defendants demonstrated in their opening brief, the securities laws prescribe only those omissions that render affirmative statements misleading.  *See* Def. Br., pp. 17-18.  The Church fails to explain how the alleged omission of information regarding a "guided architecture" program rendered any of the Trustee's alleged affirmative statements misleading.

The Church again urges "flexibility" in applying Rule 9(b).  Opp., p. 17.  Courts do apply the Rule flexibly where a plaintiff can make a "showing that further particulars of the alleged fraud could not have been obtained without discovery."  *Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1323 (7th Cir. 1998).  But the Church has not made, and does not argue that it can make, such a showing here.  The Church says that it "*intentionally did not identify* the specific Indianapolis officers and employees who met with the Church." Opp., p. 19 n.10. (emphasis added).  That rebuts any suggestion that the Church needs discovery to comply with Rule 9(b).  Moreover, even when a plaintiff can show that it needs discovery to identify the defrauders, the plaintiff "still ha[s] to specifically identify [the defendant's] allegedly fraudulent statements." *Katz v. Household Intern., Inc.*, 91 F.3d 1036, 1040 (7th Cir. 1996).  The Church has not done that either.

**D.     The Complaint's Four References to the Parent Company Fail to Assert Any Claim.**

The Church does not dispute that its Complaint conflates the Trustee and the Parent Company.  Nor does the Church deny that its Complaint contains only four specific references to the Parent Company, none of which supports a claim for constructive fraud, securities fraud, or breach of trust.  Instead, the Church argues without factual support that the corporate veil should be pierced, tries to cure the Complaint's deficiencies by inserting additional allegations in its

-15-

brief, and claims that any missing information about the Parent is in the possession of "JPMorgan."  None of these arguments justifies keeping the Parent in this action.

First, the Church argues that a "corporate veil may be pierced and the parent corporation held liable when the corporate form would otherwise be misused to accomplish certain wrongful purposes."  Opp., p. 28.  But as noted in *Esmark Inc. v. N.L.R.B.*, 887 F.2d 739, 753 (7th Cir. 1989), which the Church itself cites (Opp., p. 29), "the general rule is that a shareholder is not liable for the obligations of a corporation unless the shareholder exercised 'complete domination' over the corporation's decisionmaking, treating the corporation as a 'mere instrumentality' or 'alter ego' to advance the shareholder's personal interests."  And "[o]ne who seeks to have the courts apply an exception to the rule of separate existence must seek that relief in his pleading." *Gass v. Anna Hosp. Corp.*, 911 N.E.2d 1084, 1091 (Ill. App. 2009) (internal quotation omitted). The Church did not do so here.  The Church's Complaint contains no allegations to support a veil-piercing theory, and the Church may not supplement the Complaint through its brief.

Turning to the Church's attempts to add allegations that the Parent Company "aided and abetted" the Trustee in committing alleged torts, Opp., p. 29, none of these is permissible.  As a general rule, on a Rule 12(b)(6) motion, the court may consider only the plaintiff's complaint, *Rosenblum v. Travelbyus.com Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002), and not the multitude of new conclusory allegations that the Church threw into its brief with the hope that something would stick.  The Church argues that "the Parent Defendant is the master-mind and director of the fraud perpetrated upon Christ Church" and that the "Parent created the 'guided platform' architecture," (Opp., p. 30), all conclusory allegations based on no facts and found nowhere in the Complaint.  The Church also argues that the "Parent directly participated in, directed, created, and enforced a policy of steering Bank clients to JPMorgan proprietary products," (*id.*),

-16-

another conclusory allegation based on no facts and found nowhere in the Complaint. The Church is not permitted to supplement its Complaint by adding new allegations in its response brief, especially allegations such as these that have absolutely no factual foundation. The Court should not consider them here. *Rosenblum*, 299 F.3d at 661.

Even if the Court were to consider the new aiding and abetting allegations in the Church's response brief, they would be inadequate to satisfy the pleading requirements of Rules 8 and 9(b). *See Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006). The Complaint's four references to the Parent Company and the new allegations contained in the response brief contain no facts plausibly to suggest that the Parent Company aided or abetted the Trustee in any breach of trust. *See* Complaint ¶¶ 2, 4, 5 & 42. Likewise, the Complaint and the new allegations in the Church's brief contain no facts, let alone the specific details required by Rule 9(b), plausibly to allege that the Parent Company aided and abetted the Trustee in committing constructive fraud or securities fraud. A "complaint based on a theory of collective responsibility must be dismissed." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Finally, the Church argues that its investigation made it "clear that JPMorgan the Parent was directing multiple subsidiaries to create, offer, sell and administer proprietary products," (*see* Opp., p. 18), but that the information necessary to identify the responsible subsidiaries is in the possession of "JPMorgan." Yet, despite the supposed "clarity" provided by its investigation, the Church offers zero facts showing that the Parent directed any entity to do anything. The Complaint's four references to the Parent Company and the conclusory allegations in the Church's brief cannot state a claim against the Parent. The Court should dismiss all claims against the Parent Company.

## III.   <u>CONCLUSION</u>

For these reasons and those discussed in their Opening Brief, Defendants respectfully request the Court to dismiss Counts I and III with prejudice as to both Defendants and Count II with prejudice as to the Parent Company.

Respectfully submitted,

FAEGRE BAKER DANIELS LLP

*/s/ David K. Herzog*
David K. Herzog, Atty. # 8021-49
Paul A. Wolfla, Atty. #24709-49
Sarah C. Jenkins, Atty. #26421-53
Katrina M. Gossett, Atty. # 28583-49
FAEGRE BAKER DANIELS LLP
300 North Meridian Street, Suite 2700
Indianapolis, IN  46204
David.herzog@faegrebd.com
Paul.wolfla@faegrebd.com
Sarah.jenkins@faegrebd.com
Katrina.gossett@faegrebd.com
Tel. (317) 237-0300
Fax (317) 237-1000

*Counsel for JPMorgan Chase & Co.*
*and JPMorgan Chase Bank, N.A.*

-18-

**CERTIFICATE OF SERVICE**

The undersigned counsel hereby certifies that on December 23, 2014, the foregoing

Defendants' Reply Brief in Support of Motion to Dismiss was filed electronically.  Notice of this

filing will be sent to the following parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.

> Linda L. Pence
> David J. Hensel
> Julie Smith
> PENCE HENSEL LLC
> 135 N. Pennsylvania Street, Ste. 1600
> Indianapolis, IN  46204
> lpence@pencehensel.com
> dhensel@pencehensel.com
> jsmith@pencehensel.com

*/s/ David K. Herzog*

-19-